UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RYAN ANTHONY HOLL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CAUSE NO. 3:18CV1-PPS/MGG |
| v. | ) |
| | ) |
| STATE OF INDIANA, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Ryan Holl, who is proceeding in this matter *pro se*, filed this action after he was psychologically evaluated and subsequently detained at the Bowen Center in Plymouth, Indiana. He alleges that the defendants State of Indiana, City of Plymouth, Indiana, and Marshall County violated his rights under the federal constitution, Indiana state constitution, and Indiana state law. The defendants move to dismiss this action on several grounds. For the reasons that follow, I will grant the defendants' motions, but I will afford Holl an opportunity to amend his complaint.

**Background**

I take these facts from Holl's complaint, though his allegations are difficult to decipher. From what I can tell, on July 28, 2017, Holl agreed to allow a nurse named Ann Bates, who was employed by the Bowen Center in Plymouth, Indiana, to conduct a psychiatric evaluation of him. [DE 1 at 7 ¶12.] By Holl's own admissions, he engaged in what many would consider erratic behavior. For example, he "decided to sit on the floor" for the evaluation, and he "drew illustrations in his journal and stated he was

considering calling down the wrath of God on United States hospitals because too many people die from going to the hospital." [*Id.*] When Nurse Bates asked Holl to recall "3 words for five minutes," Holl "assumed she was trying to hypnotize him and decided to terminate the exam." [*Id.* at 7 ¶13.]

Holl alleges that Nurse Bates' evaluation indicated that he had "an irrational thought process, rapid pressured speech and defied redirection." [*Id.*] Nurse Bates' evaluation also apparently observed that he was paranoid and that "his mood was liable and his affect is bizarre." [*Id.*] Holl acknowledges that he admitted to Nurse Bates that he has paranoid and stated that he "has conversations with God and the devil, commonly known as prayer." [*Id.*] Ultimately, Nurse Bates concluded that Holl suffered from "Delusional disorders F22," and the staff at the Bowen Center notified Holl's father that he should be taken to the nearest emergency room for evaluation and hospitalization. The staff also stated that, if needed, police should be called to assist in transporting Holl to the emergency room. Holl claims that he was never informed of this information or provided with a copy of his diagnosis. [*Id.* at 8 ¶15.] It's not clear to me from Holl's complaint what ever came from this diagnosis and recommendation, including whether Holl was hospitalized at this time.

A short time later, on August 29, 2017, Holl, after promising a family member that he would submit to another psychological examination and "take it seriously," called the Bowen Center and requested another appointment with Nurse Bates. [*Id.* at 8 ¶17.] Holl reported to the Bowen Center on September 1, 2017, in order to undergo a

second psychological evaluation. [*Id.* at 9 ¶19.] The details that Holl provides concerning this evaluation are odd. He apparently became dissatisfied with Nurse Bates – believing that she was not qualified to perform a psychological evaluation – and so he ended the meeting "giving her a dollar bill as a tip, and explaining to her I had to go take care of a coconut for my mother...." [*Id.* at 10 ¶21.]

According to Holl, a doctor named Santosh Maharjan signed a "Physician's Emergency Statement" that morning, while Holl was still undergoing the evaluation by Nurse Bates. The details of this process are not clear to me, but it appears that Nurse Bates described Holl as a potential danger, that his psychosis caused his behavior to be unpredictable, and that he lacked judgment to care for his own health. [*Id.* at 11 ¶25.] As a result, from what I can glean from Holl's complaint, he appears to have been detained at the Bowen Center after a judge issued an order pursuant to Indiana Code 12-26-5-1. This section of the Indiana Code provides that mentally ill, dangerous individuals may be detained in a facility for not more than 72 hours if certain conditions are met. In any event, Holl denies that he was suicidal and says that he does not have "homicide ideations," though he admits he is disoriented to time. [*Id.* at 10 ¶21.] He also "viciously disputes he was psychotic." [*Id.* at 11 ¶24.]

What Holl describes next is a meeting with Detective Magnus and Officer Weir of the Plymouth Police Department, but again I'm not sure where this fits into the story. Holl doesn't tell me what role these officers played in the underlying events, though I surmise that they are the officers who transported Holl to the Bowen Center. It appears

that they must have detained him, since Holl alleges that the officers "didn't provide me with the legal paper showing me he had the right to detain me" and that Holl was handcuffed. [*Id.* at 12-13 ¶¶28-30.] Holl also alleges that another officer, Patrolman Giodano of the Marshall County Sheriff Department, arrived later. This officer appears to have had some role in Holl's detention and transportation to the hospital, as Holl alleges that Officer Giodano wouldn't provide him with "the legal document ... on the car ride down when I had my hands cuffed behind my back." [*Id.* at 13 ¶30.] Holl also says that Officer Giodano told Holl to "stop resisting" when he removed Holl's handcuffs at the hospital. [*Id.*] During this encounter, Holl was not read his Miranda rights and was not allowed to speak to an attorney. [*Id.* at 20 ¶54.]

Following Holl's transportation, it seems that Holl was detained at the Bowen Center. He claims that he was not allowed to contest his diagnosis and that he was not even informed of his diagnosis before being "locked up and thrown into a hospital." [*Id.* at 14 ¶32.] At the Bowen Center, Holl says that he requested his lawyer and access to a doctor, but his requests were denied. [*Id.* at 14 ¶33.]

After this, Holl was "let out into the general population," though I'm not sure what he's referring to exactly, but it appears that this took place while he was still detained at the Bowen Center. [*Id.* at 14 ¶34.] Holl says that he called 911, but received a busy signal. [*Id.*] He then called the Marshall County courthouse phone number and was told that his 72-hour detention order "did not count Saturday, Sunday or Monday," so he would be detained until Thursday. Ultimately he was detained for "an entire

week." [*Id.*] He was also informed that the hospital would provide the paperwork to get a court date scheduled, but that he could not schedule one over the phone and could not speak with Judge Palmer. [*Id.*] It's not apparent to me who Judge Palmer is, but from context I infer that he was the judge who signed an order of detention for Holl after Nurse Bates found that he was a danger.

While he was detained, Holl alleges that staff at the Bowen Center held him down against his will and placed two pills in his mouth. [*Id.* at 18 ¶49.] He was forced to swallow the drugs. [*Id.* at 21 ¶55-58.] He was also forcefully injected with drugs without his consent. [*Id.* at 20 ¶54.] Holl also repeatedly asked to speak with a lawyer and to get access to a court in order to have an emergency hearing. These requests were denied. [*Id.* at 19 ¶50.] He was further coerced into signing a voluntary committal order. [*Id.* at 20 ¶54.]

Holl, who is proceeding in this matter *pro se*, filed a complaint against the State of Indiana, City of Plymouth, and Marshall County, alleging that these events violated a multitude of constitutional provisions, human rights law, and state law. The defendants have all moved to dismiss. Since the defendants filed their motion to dismiss, Holl has submitted numerous letters that contain what I can only describe as gibberish. Not only are they confusing and irrelevant, they are also offensive and demeaning to the judicial process. [*E.g.*, DE 20, 21, 22, 25, 28, 31, 32, 34, 35, 36, 37, 39, 40, 41.] Notwithstanding Holl's submissions, which come dangerously close to constituting

5

an abuse of the judicial process, I will consider the defendants' motions to dismiss on the merits.

## Analysis

In reviewing a motion under Rule 12(b)(6), I "'must accept as true all of the allegations contained in a complaint' that are not legal conclusions." *Toulon v. Continental Casualty Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The complaint must be construed in the light most favorable to Holl, and all possible inferences must be drawn in his favor. *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012). "To survive a motion to dismiss, a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Boucher v. Finance Sys. of Green Bay, Inc.*, 880 F.3d 362, 365-66 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Plausibility" does not require "probability," but "more than a sheer possibility that a defendant has acted unlawfully" is required to survive a challenge under Rule 12(b)(6). *Id.*

Holl has brought numerous claims against three defendants: the State of Indiana, the City of Plymouth, and Marshall County.[1]  I will address Holl's claims against the State of Indiana first and then will turn to his claims against the City and County.

*Claims Against the State of Indiana*

One of Holl claims is that the defendants, including the State of Indiana, violated his rights under the federal constitution.  Holl is therefore raising a claim under 42 U.S.C. § 1983.  Section 1983 provides a private right of action for violations of the federal constitution by persons acting under color of state law. Holl has named the State of Indiana as a defendant in this action.  However, the "Eleventh Amendment bars private litigants' suits against nonconsenting states in federal courts, with the exception of causes of action where Congress has abrogated the states' traditional immunity through its powers under the Fourteenth Amendment." *Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005).  Congress did not abrogate the states' Eleventh Amendment immunity when it enacted Section 1983, and Indiana has not consented to this suit.  *See Moore v. Indiana*, 999 F.2d 1125, 1128-29 (7th Cir. 1993).  Therefore, the Eleventh Amendment bars this suit, and the claims against the State of Indiana must be dismissed.

---

[1] It also appears that Holl has brought the exact same claims against a fourth defendant, the Bowen Center, in a separate lawsuit.  *See Holl v. Bowen Health Ctr.*, No. 3:18-cv-2 (N.D. Ind. Filed Jan 3, 2018).  I'm not sure why these cases were not filed together, but that is an issue I will take up at a later time.

Holl is mistaken about the scope of Eleventh Amendment immunity. Holl argues that he is still a citizen of Indiana, and therefore Indiana is not entitled to immunity. Holl's view of the Eleventh Amendment likely comes from its text:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend XI. Although the text of the Eleventh Amendment refers to "citizens of *another* State," the Supreme Court has "extended the Amendment's applicability to suits by citizens against *their own* States." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (emphasis added). Thus, whether Holl is a citizen of Indiana is immaterial to whether Indiana is entitled to sovereign immunity.

Notwithstanding the Eleventh Amendment, Holl may still bring his claims and overcome this bar by naming individuals, rather than the State of Indiana. To state a claim for injunctive relief, Holl must name individual officers in their official capacities. *See Ameritech Corp. v. McCann*, 297 F.3d 582, 586 (7th Cir. 2002). To state a claim for damages, Holl must name individual officers in their individual capacities. *See Moore*, 999 F.2d at 1129. In amending his complaint, however, Holl must bear in mind that Section 1983 "creates a cause of action based upon personal liability and predicated upon fault. An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986) (quoting *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)

(emphasis in original)); *see also Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012). Holl must amend his complaint in order to properly state a claim.

There is an another deficiency in Holl's complaint. In addition to damages, Holl seeks revisions to the Indiana Code and additional training to the police and sheriff department. These are claims for injunctive relief. "It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). However, past exposure to illegal conduct does not, in and of itself, show a present case or controversy regarding injunctive relief if it is unaccompanied by any continuing, present adverse effects. *Id.* at 102. Instead, to obtain injunctive relief, the threat to the plaintiff must be "sufficiently real and immediate to show an existing controversy." *See id.*

Here, Holl has not alleged any facts that suggest a "sufficiently real and immediate" threat that would warrant injunctive relief. Without such an allegation, there is no case or controversy as required by Article III of the federal constitution. Holl must amend his complaint to allege a case or controversy sufficient to invoke this Court's jurisdiction. To do so, Holl can allege facts generally showing that he is at risk he will be harmed by the defendants' misconduct in the future and that his injury will likely be redressed by injunctive relief. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Of note to Holl's claim, it may be the case that his claim is capable of repetition, yet evades review. To fall into this exception, Holl can allege facts showing

that the duration of the case is too short to allow a determination on the merits and that he has a reasonable expectation of suffering from the same harm again. *Stotts v. Comm. Unit Sch. Dist. No. 1*, 230 F.3d 989, 991 (7th Cir. 2000).

Finally, there is yet another problem with Holl's complaint, though this one cannot be remedied by amending his complaint. Several states, and the federal government through Section 1983, have enacted statutes creating or regulating claims for damages for state constitutional violations. "Indiana, however, has no statutory provision comparable to 42 U.S.C. section 1983 creating an explicit civil remedy for constitutional violations by either individual officers or governmental entities." *Cantrell v. Morris*, 849 N.E.2d 488, 493 (Ind. 2006). And both Indiana and federal courts have declined to find an implied right of action for damages under the Indiana constitution. *Smith v. Ind. Dept. of Corr.*, 871 N.E.2d 975, 985 (Ind. Ct. App. 2007). Because a federal district court charged with applying existing Indiana law is not the proper forum to undertake such a dramatic change in Indiana law, *see, e.g., Estate of O'Bryan v. Town of Sellersburg*, 2004 WL 1234215, at *21 (S.D. Ind. May 20, 2004), I too decline to imply such a cause of action. Therefore, Holl's claims for damages under the Indiana constitution – against all of the defendants – must be dismissed with prejudice.

*Claims Against Marshall County and the City of Plymouth, Indiana*

Holl has also brought claims against Marshall County and the City of Plymouth, Indiana. His claims appear to relate to the actions of Detective Magnus and Officer Weir, who work for the Plymouth Police Department, and Officer Giodano (whom the

defendants refer to as Officer Giordano), who works for the Marshall County Sheriff's Department.

There are several problems with Holl's complaint as it relates to his claims against Marshall County and the City of Plymouth. First, Holl has sued Marshall County alleging that one of its police officers violated his rights. However, under Indiana law, the County Sheriff and the County are two separate entities and are not responsible for each other's actions. *See Argandona v. Lake Cty. Sheriff's Dept.*, 2007 WL 518799, at *3 (N.D. Ind. Feb. 13, 2007). The County Sheriff is an independently elected office established by the Indiana Constitution. Ind. Const. Art. 6, § 2; *Argandona*, 2007 WL 518799, at *3. "The duties and responsibilities of a sheriff's department are established by the Indiana State legislature," Ind. Code § 36-2-13-1, *et seq.*, and a "sheriff's department acts independently of a county board of commissioners." *Argandona*, 2007 WL 518799, at *3 (citing *Donahue v. St. Joseph Cty.*, 720 N.E.2d 1236, 1241 (Ind. Ct. App. 1999)). A county therefore has no agency relationship with the sheriff or the sheriff's department and so cannot be held liable under a *respondeat superior* theory for the actions of the sheriff or sheriff's department. *Carver v. Crawford*, 564 N.E.2d 330, 334 (Ind. Ct. App. 1990).

The Marshall County Sheriff's Department is a separate municipal entity and is subject to suit under Section 1983. *See Argandona*, 2007 WL 518799, at *5. Because Holl named Marshall County as the defendant for actions he claims were committed by an officer employed by the Marshall County Sheriff's Department, he must amend his

complaint to name the Marshall County Sheriff's Department. He may also name individual defendants, as I explained earlier.

Anticipating that this would be the case, Marshall County argues that, even if Holl had sued the Marshall County Sheriff's Department (the proper defendant), dismissal would still be appropriate because Holl has failed to state a plausible claim for relief under Section 1983. Assuming that Holl's claims were brought against the Marshall County Sheriff's Department, Holl would then have sued a governmental entity. The same is true for his claims against the City of Plymouth. A governmental entity is liable under Section 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). A plaintiff can establish municipal liability under Section 1983 by pleading that the constitutional violation was caused by: (1) an express policy; (2) a widespread practice that, "although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) a person with final policymaking authority. *Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997).

Based on what Holl has pled, I cannot discern any allegation that his constitutional rights were violated because of some policy or widespread practice by the Marshall County Sheriff's Department or the City of Plymouth. Indeed, none of the factual detail included in Holl's complaint indicates that his alleged constitutional

12

violations were the result of any municipal policy, widespread practice, or the decision of an official with final policymaking authority.

Although Holl has not expressly alleged municipal liability, it is possible that amendment could cure this deficiency. Holl should amend his complaint, as it relates to the claims against the Marshall County Sheriff's Department and the City of Plymouth, to address whether his constitutional violations were the result of either an official policy, a widespread practice, or the decision of an official with final policymaking authority. *See id.* As noted earlier, Holl may also name the individual officers involved in his transportation to the hospital.

Finally, Marshall County and the City of Plymouth argue that either quasi-judicial immunity or qualified immunity is appropriate here. First, according to the defendants, the members of law enforcement implicated in Holl's lawsuit were acting pursuant to an emergency detention order signed by an Indiana judge. "[P]olice officers, sheriffs, and other court officers who act in reliance on a facially valid court order are entitled to quasi-judicial immunity from suit under § 1983 for damages." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1239 (7th Cir. 1986). Second, in the alternative, the defendants argue that the officers are entitled to qualified immunity. Under the doctrine of qualified immunity, defendants are immune from liability for damages under Section 1983 unless the defendants violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800,

13

818 (1982)). The defendants argue that a reasonable officer would believe that his actions were lawful in taking Holl into custody and transporting him to the Bowen Center due to the existence of a facially valid court order that authorized him to do exactly that.

Although the defendants' assertion that immunity is appropriate here may be correct, it still is the case that Holl has not in fact named individual officers in his complaint. I therefore decline to reach the merits of their argument for immunity until Holl has done so. To address it now would be premature.

**Conclusion**

Based on the foregoing, the Defendant State of Indiana's Motion to Dismiss for Failure to State a Claim [DE 13] is GRANTED.

The Defendants Marshall County and City of Plymouth's Motion to Dismiss for Failure to State a Claim [DE 16] is GRANTED.

Plaintiff Ryan Holl's claims against all defendants for damages based on alleged violations of the Indiana constitution are DISMISSED WITH PREJUDICE. The remainder of Holl's claims against all defendants are DISMISSED WITHOUT PREJUDICE.

Plaintiff Ryan Holl is AFFORDED 30 days to file an amended complaint that addresses the deficiencies identified in this Opinion. Holl is CAUTIONED that if he does not file an amended complaint with 30 days of this Opinion, all of his claims will be dismissed with prejudice.

Holl is further advised that any further inappropriate ex parte filings will be stricken and could result in monetary and/or other sanctions against him.

**SO ORDERED**.

ENTERED: June 15, 2018.

s/ Philip P. Simon<br>
**PHILIP P. SIMON, JUDGE**<br>
**UNITED STATES DISTRICT COURT**